## COUNTY OF HAMPDEN, AT SPRINGFIELD, SEPTEMBER TERM 1860.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,
HON. PLINY MERRICK,
HON. EBENEZER R. HOAR,
} JUSTICES.

---

## COMMONWEALTH vs. ALEXANDER DESMARTEAU.

In this commonwealth, the technical definition of murder remains the same under *St.* 1858, *c.* 154, as the common law definition as previously recognized by the courts.

Under *St.* 1858, *c.* 154, murder committed with extreme atrocity or cruelty is murder in the first degree, although the atrocity or cruelty is not alleged or proved to have been premeditated.

Evidence that a man enticed a girl under eight years of age out of a house, and immediately ravished her, thereby inflicting severe wounds upon her person, and as a part of the same transaction, and for the purpose of concealing that crime and escaping punishment therefor, inflicted numerous severe blows upon her head and face and threw her into a river, and by these means caused her death, is sufficient evidence of murder committed with extreme atrocity and cruelty to warrant a jury in finding him guilty of murder in the first degree under *St.* 1858, *c.* 154, even if the only means of death alleged in the indictment are blows upon the head and face, and drowning.

On an indictment for murder, containing several counts in legal form, varying only in the statement of the means of death, if the jury find the defendant guilty of murder in the form set out in either count, they need not return a separate verdict on each count, but may find him guilty generally.

An indictment for murder by bruises and wounds of a person described throughout as

Augustine, except in alleging that of said bruises and wounds "the said Augustina died," is not bad after verdict.

An indictment alleging murder in the same form as at common law will support a verdict of guilty of murder in the first degree under *St.* 1858, *c.* 154.

An indictment for murder, which, after describing the mode of the commission of the crime, introduces the legal conclusion by the words " and so the jurors " say, is not bad for argumentativeness.

An indictment for a murder at Chicopee is not bad for describing it at " Chickopee."

Interlineations in an indictment, and the use of the abbreviation " sd " for " said," are no ground for arresting judgment.

In an indictment for murder the person murdered may be described by the name by which he is commonly called and known, although differing from his name of baptism.

INDICTMENT for the murder of Augustine Lucas at Chicopee in this county, containing three counts, the second of which was as follows:

" And the jurors aforesaid on their oath aforesaid do further present that the said Alexander Desmarteau at Chickopee aforesaid in the county of Hampden aforesaid on the fifth day of November in the year eighteen hundred and fifty eight in and upon one Augustine Lucas of said Chickopee feloniously, wilfully and of his malice aforethought did make an assault, and that the said Alexander did then and there by some weapon and instrument to the jurors unknown the said Augustine upon the right side of the head and face and upon the forehead and nose and upon the left side of the head of her the said Augustine then and there feloniously, wilfully and of his malice aforethought did strike and beat, giving unto the sd Augustine then and there with sd weapon and instrument to the jurors unknown by the strokes aforesaid in the manner aforesaid in and upon the right side of the head and face and upon the forehead and nose and upon the left side of the head of her the sd Augustine divers deadly and mortal bruises and wounds of which said mortal bruises and wounds the said Augustina then and there instantly died. And so the jurors aforesaid upon their oath aforesaid do say that the said Alexander the said Augustine did then and there in manner and form aforesaid feloniously, wilfully and of his malice aforethought kill and murder against the peace of said Commonwealth and contrary to the form of the statute in such case made and provided."

The other counts were in similar form. The first charged that the murder was committed by casting, throwing and pushing the said Augustine into the Connecticut River, and so choking, suffocating and drowning her. The third alleged that the death was caused by the blows and drowning both. In the third count the wound was alleged to have been given " to the sd Augustine upon the head and face and forehead of her the sd Augustina ; " and the name of the deceased was written " Augustine " throughout the residue of this count and the whole of the first count.

The defendant pleaded not guilty, and was tried at April term 1860 before *Dewey, Bigelow, Merrick* and *Hoar,* JJ., who allowed the following bill of exceptions :

" The defendant claimed upon the evidence that the murder, if committed by him, was not committed with deliberately premeditated malice aforethought; and requested the court to rule, that if the murder was not deliberately premeditated, the jury could not find the defendant guilty of murder in the first degree, although committed with extreme atrocity or cruelty. The defendant also contended that to constitute a murder in the first degree, by reason of its being committed ' with extreme atrocity or cruelty,' the atrocity and cruelty must be premeditated, and if not so premeditated, it would be only murder in the second degree.

" The court instructed the jury that the technical definition of murder in this commonwealth was the common law definition, as recognized by the courts of this commonwealth prior to the *St.* of 1858, *c.* 154; that the form of the indictment in a case of murder was the same, and no new allegations required in the same by reason of that statute; that by the statute the jury have a further duty to perform, viz. to find whether the case be murder in the first or second degree; that the case of murder in the first degree may be established in three different ways: 1. Murder committed with deliberately premeditated malice aforethought. 2. Murder committed in the commission of an attempt to commit any crime punishable with imprisonment for life. 3. Murder committed with extreme

atrocity or cruelty ; that these are so far independent provis-
ions, that either of the three cases stated, if duly established
by the evidence, would authorize the jury to return a ver-
dict of murder in the first degree ; that, as to the first, in the
very language of the statute, it requires ' deliberately premedi-
tated malice aforethought' to be proved, and the counsel for the
defendant has correctly defined those words as requiring the act
to be done with a formed design and premeditation before the
act, and that to premeditate was to think of it beforehand ·
that the jury would take the rule of law, as to the first mode
stated as above, as was stated by the counsel for the defendant;
that as to the second mode, as under the circumstances of the
present case it was not relied upon by the attorney general
and the jury would not be required to pass upon it, no instruc-
tions were necessary ; that as to the third mode stated, that
of ' murder committed with extreme atrocity or cruelty,' it was
relied upon by the counsel for the government, and would be a
subject for their consideration ; and they were instructed by the
court, that if they were satisfied by the evidence that the de-
ceased, a girl under eight years of age, was by the persuasions
of the prisoner enticed from the house of Mrs. Burlin, at or
about six o'clock on the evening of the 5th of November 1858,
and the prisoner, having thus acquired the confidence of the
child and the possession of her person, at once proceeded to
perpetrate upon her person the crime of rape, actually ravish-
ing her body by force, and thereby inflicting severe wounds
upon the private parts of her body, and as a part of the same
transaction and for the purpose of concealing this crime and
escaping punishment therefor, proceeded further to inflict nu-
merous severe blows upon her head and face, and then to throw
her body into the Connecticut River, and by these means caused
her death, it would be competent for the jury to find the prisoner
guilty of murder committed with extreme atrocity and cruelty,
and of murder in the first degree.

  " The counsel for the prisoner asked that the jury might be
instructed to render a verdict on the three counts in the indict-
ment separately.   But the court ruled that there being but one

Commonwealth *v.* Desmarteau.

offence charged, though set forth in various counts adapted to meet the evidence, if the jury found the prisoner guilty of the murder in either of the counts set forth, they may find him guilty generally.

" It appeared by the evidence of the mother of the child, that the deceased was a French girl formerly living in New York, and that she was there baptized by the name of Augustine Alexandrine, and also that on some former period her name had been thus written in a book, to be kept by some of the family or their friends. The parents of the child had some time since separated, and the child had not of late been living with her mother. Various witnesses, including the members of the family where the child was living at the time of the alleged murder, testified to the fact, that since her residence in this commonwealth she had been always called and known by the name of Augustine only, and they never heard of her having any other name; and her mother, being recalled, stated that her child was baptized Augustine Alexandrine, but she was called and known only by the name of Augustine. The counsel for the prisoner insisted that there was a variance in the name of the deceased as stated in the indictment and shown by the evidence. Upon that point the jury were instructed that the name of the party alleged to have been killed must be truly and properly stated in the indictment; but it is sufficiently stated if the name by which the person has been commonly known and called by all those who have known her, or had occasion to call her name, is the same as that stated in the indictment; and that the mere fact that the deceased, while an infant, and resident of another state, was baptized by the name of Augustine Alexandrine, and that her name was thus entered on a family book, would not be fatal to the indictment, if the jury found the name set forth in the indictment corresponded with the name by which the deceased was generally known and called, agreeably to the rule above stated.

" The jury returned a verdict of guilty of murder in the first degree. The defendant excepts to the foregoing rulings and directions to the jury."

Commonwealth *v.* Desmarteau.

The defendant also moved in arrest of judgment, for the following reasons : 1st. That murder in the first degree is in no way charged ; 2d. That the defendant is charged with different murders and the murder of different persons ; 3d. That it is not alleged that the different acts done by the defendant, as stated in the indictment and in its several counts, were perpetrated upon the same person ; 4th. That it does not allege that the person upon whom the acts of violence were perpetrated was the same one that died ; 5th. That the indictment is argumentative and bad ; 6th. That the indictment is mutilated, interlined and altered ; 7th. That the acts are not alleged to have been committed in any town of this commonwealth ; 8th. That the indictment, taken together, is inconsistent, unintelligible, contradictory and insufficient.

*G. M. Stearns,* for the defendant. The *St.* of 1858, *c.* 154, established a new crime — murder in the first degree. " The words ' malice aforethought,' in the description of murder, do not imply deliberation." By *Shaw,* C. J., in *Commonwealth* v. *Webster,* 5 Cush. 306. The common law definition of murder is of murder in the second degree under the statute. Suppose the defendant had pleaded guilty, for what should he have been sentenced ? [DEWEY, J. Must he not, if he pleads guilty, plead just what the jury should find ?] The Gen. Sts. *c.* 112, § 8, only say, " if he pleads guilty," one justice may award sentence. [MERRICK, J. Does not a plea of guilty admit the offence to the whole extent charged ?] Undoubtedly ; but that leaves open, what is the offence charged ? This court has no jurisdiction to try all murders, but only capital crimes ; and if the indictment is for murder in the second degree, the court has no jurisdiction. Rev. Sts. *c.* 81, § 13. Gen. Sts. *c.* 112, § 5. By *St.* 1858, *c.* 154, § 2, " murder not appearing to be in the first degree is murder in the second degree." This must appear by the indictment, which must be drawn, not merely according to the statute, but according to the Constitution, by which " no subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him." Declaration of Rights, art. 12.

Commonwealth *v.* Desmarteau.

If murder in the first degree is charged at all in the indictment, the Commonwealth selected the ground of deliberately premeditated malice aforethought, and could resort to no other. *People v. White*, 24 Wend. 580. It was not competent for the jury, under the indictment, to find the defendant guilty of murder in the first degree, by reason of extreme atrocity or cruelty, as atrocity and cruelty are not alleged. The indictment negatives atrocity and cruelty, as it alleges that instant death was the result of the means used.

Murder committed with unintentional and unpremeditated atrocity or cruelty is not murder in the first degree. Under this branch of the statute, the killing with malice aforethought is not murder in the first degree, but the defendant must be guilty of something more; and that is wilful and intentional extreme atrocity or cruelty. 1 Russell on Crimes, 539.

The facts stated by the court did not make a case of murder committed with extreme atrocity or cruelty. It is not extremely cruel or atrocious, compared with usual means of murder, to perpetrate it by severe blows upon the head and face, and by then throwing the stricken person into a river. The fact that the rape was extremely atrocious and cruel does not operate to make the murder so, as the murder, according to the facts stated, was an afterthought, and was committed for the purpose of concealing an already perpetrated and completed atrocity. The court submitted to the jury for their consideration, as a cause of death, wounds upon the private parts of the deceased, when no such wound or cause of death was alleged in the indictment. If such wounds were not a cause of death and submitted to the jury as a cause of death, then the court should not have instructed the jury that these wounds might be considered upon the question of atrocious murder; for murder is the causing the death. If the wounds had nothing to do with the death, then they formed no part of an atrocious and cruel murder; if they in any degree contributed to it, then the verdict cannot be sustained upon an indictment which charges that the death resulted from causes unconnected with and uncontrolled by these wounds.

The defendant had a right to have the jury required to agree upon each count, and not merely to agree to the fact of the murder without an agreement upon the cause. *Parrot* v. *Thacher,* 9 Pick. 426

The indictment should describe the deceased by her true name, or by the name by which she was commonly known. It purports to set out the former, and the name alleged must be proved to be the deceased's real name. The true name of a person is that name by which such person is baptized in infancy. 1 Russell on Crimes, 555. 1 Greenl. Ev. § 65. 3 Greenl. Ev. § 22.

The indictment is bad in arrest of judgment, for the reasons assigned. 1st. It does not charge murder in the first degree, as already argued. 2d. It alleges two persons, Augustine and Augustina, to have died from the violence of the defendant; and as the jury have found a general verdict, there is nothing to show which of these two he is to be sentenced for murdering. 3d. There is nothing to show that the same person is spoken of throughout, for the letters " sd " have no signification. 4th. It alleges that Augustine received the blow and that Augustina died. 5th. It alleges certain facts, and then proceeds, " and so the jurors do say that the defendant did kill and murder," as a conclusion from those facts. *Commonwealth* v. *Whitney,* 5 Gray, 85. *Dias* v. *State,* 7 Blackf. 20. 6th. There is no such town as Chickopee. 7th. An indictment cannot be changed or altered without the consent of the grand inquest, and that consent should appear. 2 Archb. Crim. Pl. (Waterman's ed.) 212–214, notes. 8th. The indictment is therefore contradictory and insufficient.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

DEWEY J. The provisions of the *St.* of 1858, *c.* 154, have materially affected the course of proceedings in the case of a trial of a party charged with the crime of murder. Although the form of the indictment in such cases remains as heretofore adopted and sanctioned in this commonwealth, yet the punishment for the crime of murder is made to depend upon the finding of the jury whether it is murder in the first or second

degree, and the jury are by the statute required to find the degree of murder. Murder in the first degree is declared by this statute to be a " murder committed with deliberately premeditated malice aforethought, or in the commission of an attempt to commit any crime punishable with death or imprisonment for life, or committed with extreme atrocity or cruelty." The court, upon the trial of the present case, properly instructed the jury that the technical definition of murder in this commonwealth was the common law definition of murder as recognized by the court prior to the *St.* of 1858, *c.* 154, and that under this form of indictment the jury are by their verdict, if they find the prisoner guilty, to find also the degree of murder. The first degree embraces the cases stated above, and they constitute three distinct classes, either of which, if proved, constitutes murder in the first degree.

As to the second of these classes, although not material to the present case, it may be proper to remark that an obvious error has occurred in the words " in the commission of an attempt to commit any crime punishable with death or imprisonment for life," in substituting " an " for " or," and thus excluding the case of a murder committed in the actual commission of a crime punishable with death or imprisonment for life, and confining it to the case of murder committed in an attempt to commit such crime. Upon recurring to the form of a law proposed by the commissioners on the penal code, reported to the legislature in 1844, from which the *St.* of 1858, *c.* 54, was apparently copied, this error will at once be perceived, and it has since the trial in the present case been corrected by the Gen. Sts. *c.* 160, § 1.

As to the case of murder committed " with deliberately premeditated malice aforethought," the instructions given to the jury are not made the subject of any exception. The sole inquiry upon this branch of the case, is of the correctness of the instructions as to what constitutes a murder " committed with extreme atrocity or cruelty." The counsel for the prisoner contended that to constitute a murder in the first degree, by reason of its being committed with extreme atrocity or cruelty,

the atrocity and cruelty must be premeditated. In the opinion of the court, this position cannot be maintained. The three different cases stated as authorizing a conviction of murder in the first degree are so far independent, that the existence of either would authorize the jury to return a verdict of murder in the first degree. The statute has made extreme atrocity or cruelty in the commission of the murder sufficient to constitute the crime of murder in the first degree; and if this be shown, it is not incumbent on the government affirmatively to show that such atrocity and cruelty were premeditated.

In the present case, the instruction to the jury, that "if they were satisfied by the evidence that the deceased, a girl under eight years of age, was by the persuasions of the prisoner enticed from the house of Mrs. Burlin, at or about six o'clock on the evening of the 5th of November 1858, and the prisoner, having thus acquired the confidence of the child and the possession of her person, at once proceeded to perpetrate upon her person the crime of rape, actually ravishing her body by force, and thereby inflicting severe wounds upon the private parts of her body, and as a part of the same transaction and for the purpose of concealing this crime and escaping punishment therefor, proceeded further to inflict numerous severe blows upon her head and face, and then to throw her body into the Connecticut River, and by these means caused her death, it would be competent for them to find the prisoner guilty of murder committed with extreme atrocity and cruelty, and of murder in the first degree," was in the opinion of the court most fully authorized, these facts showing a case of murder committed with extreme atrocity and cruelty. In this third class it is the barbarity and atrocity which attend such murder, that increase the guilt of the party, and that call for the highest degree of punishment known to our law. The mere recital of the facts that make up the history of this homicide, it would seem, should silence every doubt of its being a case of most aggravated atrocity and cruelty. It is further to be remembered that the instruction to the jury upon this point was merely the legal instruction that it would be competent for the jury to find a

Commonwealth *v.* Desmarteau.

verdict of guilty of murder in the first degree upon proof of such facts as were stated.   It left the matter wholly to the jury so to find, or not to find, only ruling as to the competency of such evidence to establish the atrocity and extreme cruelty prescribed in the statute.

It is upon the present hearing objected, that many of the facts stated as subjects for the consideration of the jury, as bearing upon this point, were not stated in the indictment.   We are of opinion that they need not be.   Such facts may not have been the cause of death, and yet they may materially have contributed to make the killing one of atrocity and extreme cruelty.

The counsel for the prisoner asked that the jury might be instructed to render a verdict on the three counts separately. These counts charge the offence in different forms as to the mode of perpetrating the same.   1st.   That the death was caused by throwing the deceased into the Connecticut River, whereby she was suffocated and drowned.   2d.   That the murder was committed by an assault with some weapon and instrument unknown.   3d.   That the murder was committed by an assault with a weapon and instrument unknown, and by throwing the deceased into the Connecticut River, by which wounds and casting into the Connecticut River she came to her death.

There being but one offence charged, though set forth in various counts, adapted to meet the evidence, the jury were properly instructed that if they found the prisoner guilty of the murder as set forth in either of the counts, they might return a verdict of guilty, generally.   Under this instruction, the jury have, by a general verdict of guilty, found the prisoner guilty of murder as set forth in some one of the counts at least; for it was only upon such finding that the general verdict of guilty, under the ruling of the court, could be rendered.   It is important and perhaps material to the consideration of the present question that each and every one of these counts is in technical form, aptly drawn, and sets forth fully all that is necessary to constitute a charge of murder, and to authorize a judgment and sentence therefor.   Had a verdict been rendered in form on either of these counts, no objection could have been taken to a judgment and sentence

thereon.   A separate verdict on each of these counts, assum-
ing that verdict to have been guilty upon one of them, and
not guilty upon the others, would have presented the case, as
regards the judgment and sentence thereupon, precisely as it
now stands.   A conviction upon one is equally fatal to the pris-
oner as upon all, it being shown that each count is good and
sufficient in itself, and would authorize a judgment and sentence
thereupon.

This practice of rendering a general verdict of guilty, without
distinguishing between the particular counts in the indictment,
where they charge only a single offence, and various counts are
introduced to meet more accurately the precise circumstances
of the transaction, has certainly been very general, and usually
adopted in capital trials in this court.

In the well known case of *Commonwealth* v. *Webster*, 5 Cush.
295, in which the defendant was charged with the murder of
Dr. Parkman, there were four counts, charging the offence to
have been perpetrated in different modes.   One of the counts
was of the most general character, charging the crime to have
been perpetrated "in some way and manner, and by some means,
instruments and weapons, to the jurors unknown."   The other
counts varied thus :  One charging a mortal wound by stabbing
with a knife ; another by a blow on the head with a hammer ;
and a third by striking, kicking, beating and throwing on the
ground.   Yet upon these a general verdict was rendered.   It
is true that no direct motion was made, as in the present case,
by the counsel for the prisoner, that the jury be directed to ren-
der a separate verdict as to each count.   But from the well
known ability of the counsel in that case, it must be assumed
that such a motion would have been made if, in their opinion,
the law would have sustained it.   The necessity for resorting to
these various and somewhat inconsistent forms of alleging the
mode in which the death was caused, is well stated by the late
chief justice in *Webster's case ;* and the reason for their being
introduced equally requires and justifies a general verdict upon
all such as are legally formal.   In reference to such counts, it
was there said by the court : " Take the instance of a murder at

sea; a man is struck down, lies some time on the deck insensible, and in that condition is thrown overboard. The evidence proves the certainty of a homicide by the blow or by the drowning, but leaves it uncertain by which. That would be a fit case for several counts, charging a death by a blow, and a death by drowning, and perhaps a third alleging a death by the joint result of both causes combined." In the case supposed, it would be as impracticable for the jury of trials to find upon the evidence which actually caused the death, as it would be for the grand jury who presented the indictment. The form of this indictment, and the reasons for it, are strikingly like the case above supposed.

In the case of *Commonwealth* v. *Dominic Daley & James Halligan*, for the murder of Marcus Lyon, tried in the county of Hampshire in the year 1806, I find the indictment to have been thus: The first count charged that Daley with a pistol gave Lyon the blow, of which he instantly died, and that Halligan was present, aiding and abetting; the second count alleged that Daley gave the blow as aforesaid, and immersed the body in Chicopee River, so that Lyon died as well by reason of the immersion as the blow, and that Halligan was present aiding and abetting; the third alleged that Daley and Halligan each with a pistol in his hand gave the mortal wounds and bruises of which Lyon instantly died. These counts differed, as will be perceived, as much as those in the case at bar; but a general verdict of guilty was rendered, the prisoners sentenced thereon, and the sentences executed upon them.

We may refer to some English cases illustrative of this point. In *Regina* v. *O'Brian*, 1 Denison, 9, where in one count A. B. was indicted for the murder of J. N. by a blow of a stick, and C. D. and E. F. were charged as aiding and abetting; and in a second count it was alleged that C. D. perpetrated the murder by throwing a stone, and A. B. and E. F. were charged as being present aiding and abetting; and a general verdict was given; it was objected to, as it left it uncertain whether the stick or the stone caused the death; but the judges held the conviction good, saying, "the mode of death in both counts being

substantially the same." In *Regina* v. *Downing*, 1 Denison, 52, where two were indicted for murder; A. in the first count being indicted as principal in the first degree, and B. as being present aiding and abetting; and in the second count B. was indicted as principal in the first degree, and A. as being present aiding and abetting; and the jury found them guilty, but said that they were not satisfied as to which of them actually committed the murder; (that is, whether the mode of causing the death was properly set forth in the first or in the second count;) the judges held that the jury were not bound to find the defendants guilty on one particular count, but might render a verdict of guilty on both. It is true, in reference to the case last cited, that the law makes no difference between the offence of principal in the first degree or principal in the second degree. Archb. Crim. Pl. (5th Amer. ed.) 12. But the case is an authority that the verdict of guilty need not be confined to one count, although only one offence is intended to be charged or offered to be proved. See also *United States* v. *Pirates*, 5 Wheat. 201.

It seems to us, in a case like the present, where all the counts are in proper legal form and relate to a single offence, and a conviction on any one requires the same judgment and the same sentence as a conviction on all would, that, if the jury find the prisoner guilty of murder in the form set forth in either of the counts, they may find him guilty generally.

On the part of the defendant, it is denied that each of these counts is in proper legal form, and would be unobjectionable upon a motion in arrest, or upon a writ of error in case such count had been the single count upon which the jury had returned a verdict of guilty. The count most strongly objected to is the second, where it is alleged " of which said mortal bruises and wounds the said Augustina then and there instantly died." In the preceding part of this count, the name of the party alleged to have been killed is written " Augustine," and it is contended that this is a variance, and that the party alleged to have died of said mortal bruises and wounds is other and different from the party described in the previous parts of this count, and upon whom the assault is alleged to have been made. That

the meaning, to any other than a technical mind seeking for discrepancies, would be entirely obvious, no one can doubt. The deadly and mortal bruises are alleged to have been inflicted on Augustine, and it is alleged "that of the said mortal bruises and wounds the said Augustina died." But upon giving to the prisoner the full benefit, as he has a right to have the full benefit, of any variance, if such exists, we are not satisfied that such variance exists. There is not a fatal variance here. The names, as written, only differ in the final letter, substituting "a" for "e." This does not necessarily change the sound of the name; it may still be *idem sonans;* you may read them as different in sound, by dividing the first into three syllables, and the other into four, or both may be pronounced alike. In the manner they are found stated in this indictment, they are legally and properly to be taken as describing the same person. In *Regina* v. *Wilson*, 1 Denison, 284, the name as set forth was John McNicole, when the true name was John McNicoll, and it was held no variance, the court saying the use of the letter "e" for "l" did not make a different name. The same mode of describing the name as Augustina in the third count also, for the above reason, would not be fatal; but in this it might also be rejected as surplusage, and the count be good and sufficient.

The objection in arrest of judgment, upon the ground that murder in the first degree is not technically charged in the indictment, there being no allegation of the act required by the statute to constitute that offence, is not tenable. The answer to this is that the crime charged in this indictment is murder as known and defined by the common law. That offence is here technically charged. The statute provision has only reference to the extent of the punishment, and for that purpose the jury are required to find the degree. This question is not now for the first time before the court. In connection with other questions raised in the case of *Commonwealth* v. *Gardner*, 11 Gray 438, it was directly held by this court that this form of indictment was sufficient, the court in the opinion in that case saying: "It seems to us to have been the clear intent of the legislature,

that the form of an indictment for murder sho'uld remain as it had been." "The legislature manifestly consider murder as one kind or species of crime, the punishment of which may be more or less severe, according to certain aggravating circumstances, which may appear on the trial." It was also held that such form of indictment in the case of murder, without distinguishing in the indictment the character of the offence as of the first or the second degree of murder, was not inconsistent with the twelfth article of the Declaration of Rights. This form of indictment has the direct authority of the legislature in the act creating the distinction between the two degrees of murder. It has the sanction of this court upon full argument, and must be held as now settled law for this commonwealth.

It was further objected that the counts in the indictment charge the killing and murder only argumentatively, by alleging "and so did kill and murder." But this will be found to be in accordance with approved forms, and to have been properly used.

Nor does any ground exist for arresting the judgment for the misspelling of the name of the town of Chicopee, by adding "k" to the first syllable. It is clearly a name *idem sonans.*

As to the minor objections suggested, that of the use of the abbreviation "sd," and several interlineations in the indictment, however they might have furnished a proper ground for a motion to the discretion of the court for quashing the indictment, had a motion to that effect been made before the party had pleaded, or perhaps before he was put on his trial, they furnish no sufficient ground for arresting judgment after a trial and verdict against the prisoner. It is unnecessary perhaps to add that such imperfections are objectionable and to be avoided, and more especially so in indictments for offences of this grade.

In presenting these views upon the case upon the exceptions, we are not to be understood as calling in question the general rule, well known and practised upon, that when there are several counts in an indictment, and a general verdict is taken without objection, upon a motion in arrest, or writ of error, if there be one good count, judgment may be entered upon that. Here the counsel for the defendant objected at the trial to such

Commonwealth *v.* Desmarteau.

general verdict; and as the operation of the rule we have referred to would prevent his taking at a later stage the objection that some of the counts were not good, it has seemed to require us to find all the counts good to sustain this ruling.

The objection relied upon to sustaining this verdict upon the ground of variance between the name of the person alleged to have been murdered, and that shown by the evidence, is wholly untenable. If the name by which the party is usually called and known be stated in the indictment, it is sufficient. The instructions were to this effect, and the jury have found no variance. Upon this point the authorities are quite uniform, and are founded in reason and good sense. In a case of larceny, in which the indictment alleged the stealing of the goods of Mary Johnson, and the evidence was that the original name of the party was Mary Davis, but that she had been called and known by the name of Mary Johnson for the last five years, the court held that there was no misdescription, and the indictment might be maintained. *Rex* v. *Norton*, Russ. & Ry. 510. In another case, where the party was indicted for stealing the goods of Richard Pratt, and it appeared that his name was Richard Jeremiah Pratt, but it was shown that he was equally well known by the name of Richard Pratt, it was held to be no case of variance, and the indictment was sustained. *Rex* v. ———, 6 Car. & P. 408. See also Rosc. Crim. Ev. (2d. ed.) 78.

Upon the whole matter we find no ground to sustain any objections presented by the bill of exceptions, or by the motion in arrest of judgment, although they have been very ably and ingeniously presented for our consideration by the counsel for the prisoner. The result is therefore that the exceptions taken by the prisoner to the rulings of the court upon the trial, as well as the motion in arrest of judgment, be overruled.

*Exceptions and motion in arrest overruled.*