\*James F. Goodlove v. State of Ohio.

1. Indictment for First Degree Murder Sufficiently Apprising Accused of Charge not Invalid for Nonprejudicial Omission or Surplusage.

   An indictment in the usual form for charging first degree murder, averring that accused with a certain pistol "unlawfully, purposely and of deliberate and premeditated malice did discharge * * * strike,. penetrate and wound with the intent aforesaid * * * in and upon. (deceased) * * * one mortal wound * * * of which he died,"· but failing, after the words "intent aforesaid," to contain the statement: "then and there giving to him * * * with said leaden bullets aforesaid," may be deficient in ·perspicuity; but such omissions, not having; prejudiced the substantial rights of accused in failing to give him accurate information of the crime charged, does not under Sec. 7215 Rev. Stat. invalidate the indictment.

2. Strike, Penetrate and Wound the Deceased a Wound Held Equivalent to Giving a Wound.

   A phrase in an indictment for first degree murder charging that accused: "did strike, penetrate and wound (the deceased, naming him) * * * one mortal wound" with a pistol and leaden bullets, is equivalent to charging the giving of such wound and such indictment having stated: all the essentials to charging such crime, is valid under Sec. 7215 Rev.. Stat.

3. "Alias" as Applied to Accused and Person Injured Construed.

   The term "alias" as applied to an accused person is distinguished from, that applied to the person wronged by accused in that greater strictness is required in identifying accused than is necessary in identifying the· victim.

4. Indictment Charging Killing of a Person Designated by one Name Alias; Another Sufficient if Deceased be Identified by the Alias Name.

   An indictment for homicide charging the killing of the deceased, giving, deceased one name alias another name, and repeating the alias name· without again referring to the former name is sufficient to support a conviction for the killing of deceased under the second mentioned name, particularly if the deceased person killed was identified by the alias: name and in the absence of evidence that deceased was ever known by· the former name.

5. Technicalities not Permitted to Override Justice.

   The policy of criminal law and practice does not allow mere technicalities: to override justice but accused persons are guaranteed such perfect protection that none shall be punished for crime except upon fair· trial,. including every step from accusation to verdict and judgment.

[Syllabus approved by the court.]

Error to Wyandot common pleas court.

**Meck & Stalter** and **J. W. Sheets,** for plaintiff in error.

\*Reversed, *Goodlove v. State,* 82 O. S. 365.

Wyandot County.

**H. H. Newell,** Pros. Atty., and **D. C. Parker,** for defendant in error:

Cited and commented upon the following authorities: Wharton, Homicide 837, 850, 851, 852, 853, 854, 855, 856; 21 Cyc. Law & Proced. 846; *McDonnall* v. *People,* 168 Ill. 93 [48 N. E. Rep. 86]; *Jones* v. *State,* 35 Ind. 122; *Territory* v. *Godas,* 8 Mont. 347 [21 Pac. Rep. 26]; *Caldwell* v. *State,* 28 Tex. App. 566 [14 S. W. Rep. 122]; *Adams* v. *State,* 28 Fla. 511 [10 So. Rep. 106]; *State* v. *Florenza,* 28 La. Ann. 945; *Veatch* v. *State,* 56 Ind. 584 [26 Am. Rep. 44]; *State* v. *Yandell,* 34 Wash. 409 [75 Pac. Rep. 988]; *State* v. *Cronin,* 20 Wash. 512 [56 Pac. Rep. 26]; *Green* v. *State,* 154 Ind. 655 [57 N. E. Rep. 637]; *State* v. *Silk,* 145 Mo. 240 [44 S. W. Rep. 764; 46 S. W. Rep. 959]; *State* v. *Freeman,* 1 Spears (S. C.) 57; *State* v. *Vaughn,* 26 Mo. 29; *McGill* v. *State,* 34 Ohio St. 228; *Hayward* v. *Calhoun,* 2 Ohio St. 164; *Eastman* v. *Wight,* 4 Ohio St. 156; *Parks* v. *State,* 4 Ohio St. 234; *Kenrick* v. *Reppard,* 23 Ohio St. 333; *Watts* v. *Ruth,* 30 Ohio St. 32; *Ryan* v. *State,* 30 O. C. C. 305 (10 N. S. 497); *State* v. *Dickerson,* 77 Ohio St. 34 [82 N. E. Rep. 969; 13 L. R. A. (N. S.) 341; 122 Am. St. Rep. 479]; *Gandolfo* v. *State,* 11 Ohio 114; *Griffin* v. *State,* 14 Ohio St. 55; *State* v. *Roderick,* 77 Ohio St. 301 [82 N. E. Rep. 1082; 14 L. R. A. (N. S.) 704]; *Marts* v. *State,* 26 Ohio St. 162; *Bucklin* v. *State,* 20 Ohio 18; 5 Am. & Eng. Enc. Law 875; *Lemmon* v. *State,* 77 Ohio St. 427 [83 N. E. Rep. 608].

**HURIN, J.**

Plaintiff in error was indicted for murder in the first degree. He was convicted of manslaughter and sentenced to the penitentiary. From this judgment he now prosecutes error.

The various errors assigned as grounds for reversal will be considered in their order.

First, it is claimed that the indictment is bad in that it charges nothing more than an assault with intent to kill one Percy Stuckey, alias Frank McCormick, and also the shooting with intent to kill, but not homicide.

It appears that the indictment is in the usual form for charging first degree murder but that the scrivener, in copying that form, omitted one phrase usually inserted, *i. e.,* immediately after the statement "did strike, penetrate and wound with intent aforesaid" he omitted the following averment "thereby then and there giving to him, the said Frank McCormick, with said leaden bullets aforesaid."

The omission of these words is said to make such a complete break

in the language of the indictment that it in fact nowhere charges that the accused gave the deceased any mortal wound.

To make clear the effect of such omission it will be necessary to recite all of that portion of the indictment, which follows the clauses reciting the assault with intent unlawfully, purposely and of deliberate and premeditated malice to kill and murder the said Frank McCormick and which reads as follows:

"And that the said James F. Goodlove, a certain pistol then and there charged with gunpowder and leaden bullets, which said pistol he, the said James F. Goodlove then and there in his right hand had and held, then and there, unlawfully, purposely, and of deliberate and premeditated malice, did discharge and shoot off to, against and upon the said Frank McCormick, with the intent aforesaid, and that the said James F. Goodlove, with the leaden bullets aforesaid, out of the pistol aforesaid, by force of the gunpowder aforesaid, by the said James F. Goodlove then and there discharged and shot off as aforesaid, him, the said Frank McCormick. in and upon the upper right side of the back of him, the said Frank McCormick, then and there unlawfully, purposely, and of deliberate and premeditated malice did strike, penetrate, and wound, with the intent aforesaid, *so as aforesaid discharged and shot out of the pistol aforesaid,* by the said James F. Goodlove, in and upon the upper right side of the back of him, the said Frank McCormick, one mortal wound of the depth of four inches and of the breadth of half an inch, of which mortal wound he, the said McCormick, then and there died."

It is urged that, because of the omission of the words before quoted, this indictment nowhere charges that James F. Goodlove gave to Frank McCormick a mortal wound; that there is nothing to connect the alleged shooting with the wound of which McCormick died, and hence the indictment is fatally defective; and that the prisoner should be discharged.

There can be no doubt that the indictment thus recited is deficient in perspicuity. The serious question is, does it fail to contain such averments as would fairly apprise the accused of the nature of the crime with which he is charged?

As was said in *Lamberton* v. *State,* 11 Ohio 282, 284:

"Every indictment should contain a complete description of the offense charged. That it should set forth the facts constituting the crime, so that the accused may have notice of what he is to meet,

* * * and * * * the court, applying the law to the facts charged * * *, may see that a crime has been committed."

In *Anderson* v. *State*, 7 Ohio (pt. 2) 250, 255, it was held that,.

"The indictment must state every circumstance of knowledge, in-tention or action that constitutes the criminal design."

The care necessary to be observed in drawing an indictment and' the reasons for such care are well set forth in the case of *Fouts* v. *State*, 8 Ohio St. 98, 114, where, after reciting the constitutional provisions, that,

"No person shall be held to answer for a capital or otherwise in-famous crime, unless on presentment or indictment of a grand jury" and that "in any trial, in any court, the party accused shall be al-lowed to demand the nature and cause of the accusation against him,. and to have a copy thereof," the court says, "Why these provisions in the fundamental law of the state? Why the ceremony and expense of a grand jury to find and return an indictment setting out the 'nature and cause of the accusation'? and why guarantee to the accused the right to demand and have a copy of the indictment, if the written averments, descriptive of the crime, are not required to be made with *certainty* and *truth*, charging the overt act with all the *substantial* and *distinguishing ingredients* which the statute creating the offense has made essential to constitute the crime?"

The reasoning of this opinion is undoubtedly sound and the case has been frequently cited with approval and never disaffirmed by the Supreme Court. See also, the case of *United States* v. *Cruikshank*, 92 U. S. 542 [23 L. Ed. 588], and the case of *United States* v. *Cook*, 4 O. F. D. 241 [84 U. S. (17 Wall.) 168, 174; 21 L. Ed. 538].

In the case of *Knight* v. *State*, 54 Ohio St. 365, 377 [43 N. E. Rep. 995], it was held that a failure "to aver all the material facts necessary to a conviction * * * is fatal as well since the statute as at common law."

The statute there referred to is Sec. 7215 Rev. Stat. and in the case at bar the prosecution relies upon its provisions as excusing the omission in the indictment.

Omitting the parts not especially applicable to this case, that stat-ute provides that,

"No indictment shall be deemed invalid * * *. for any sur-plusage, or repugnant allegation, when there is sufficient matter alleged to indicate the crime and person charged; nor for want of averment of any matter not necessary to be proved; nor for any other defect or

*Goodlove v. State.*

imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits.''

The question then narrows itself to this one issue, was the omitted allegation of this indictment so essential thereto that such omission was prejudicial to the rights of the accused, depriving him of accurate information as to the crime with which he was charged?

It may be stated as a general proposition that if an indictment substantially apprises the accused of the charge preferred against him, no mere technical omission and no surplusage will render that indictment invalid, and this is the plain intent of the statute just quoted.

Whatever may be said of the law and practice in criminal cases in other jurisdictions or at other times, it is not now the policy of the Ohio laws, to allow technicality to override justice, to magnify the shadow and conceal the substance. Yet it has been ever the boast and the just pride of our state that to every man is guaranteed such perfect protection that no one can be punished for crime except upon a *fair trial* which includes every step from the accusation to the verdict and judgment.

It was well said by Judge McIlvaine in the case of *Rufer v. State,* 25 Ohio St. 464, 468:

''While an indictment should not be construed favorably for the state, still the rule of pleading does not require the greatest certainty of averment in every particular of which the language is capable. It is sufficient that the facts constituting the crime be stated with certainty to a certain intent in general.''

And our Supreme Court in the recent case of *DuBrul v. State,* 80 Ohio St. 52, has stated the test as follows:

''A criminal charge should be preferred with such certainty and precision as will reasonably apprise the party charged of that which he may expect to meet and be required to answer, and so that the court and jury may know what they are to try and the court may determine without unreasonable difficulty what evidence is admissible; also that the record to be made will be sufficiently definite to make it clear of what the party has been put in jeopardy.''

It is contended by the prosecution that the only defect in the indictment as it stands, is that it contains superfluous phrases and that by omitting the phrase next following the place of the already omitted phrase, the indictment makes good sense and that therefore these phrases are superfluous and should be regarded as surplusage and ignored.

Wyandot County.

Let us see—Omitting for the moment, for the sake of simplicity,. all the modifying clauses and phrases, the indictment would then read:

"That the said James F. Goodlove, him, the said Frank McCormick,. did strike, penetrate and wound *one mortal wound,* of which mortal wound, the said Frank McCormick then and there died" or if we transpose this sentence into the modern English order of words, without otherwise changing it, it would read, "That the said James F. Goodlove did strike, penetrate and wound him, the said Frank McCormick, one mortal wound, of which mortal wound the said Frank McCormick then and there died."

All of this sentence, together with certain modifying clauses and phrases, descriptive of the manner of wounding and the intent, etc., is certainly to be found in the indictment.

The question is, did this language reasonably and sufficiently apprise the accused of the crime with which he was charged? If it did, the mere fact that other phrases, not essential to the sense, were also inserted would not under the statute make the indictment bad. Such phrases, if in fact unnecessary to the indictment must plainly be regarded as surplusage and under Sec. 7215 Rev. Stat. must be disregarded.

That it is an unusual use of words to say that one "did strike, penetrate and wound" a man "one mortal wound" is true.

It is common to use the expression, "to strike a blow" or "to cut a gash" or "to penetrate a cavity" or "to wound a person" but can we say that one did strike another a wound, or that he did penetrate him a wound, or that he did wound him a wound? There is nothing essentially inconsistent with good English usage in the use of any of these expressions and especially the last one. *But* each is unusual.

The use of the cognate accusative was as common in the Latin language, from which much of our legal phraseology is derived, as it is in English.

To fight a fight, to live a life, to dream a dream, to think a thought, are familiar modern examples. "Thank me no thanks." "Vow me no vows." "Plot me no plots" and like expressions appear frequently in the writings of Shakespeare, Beaumont and Fletcher and their contemporaries, though sometimes used rather as oddities of speech than as common expressions.

In the case at bar, if the use of the expression "did wound him a wound or did strike or did penetrate him a wound" is at all legitimate, then the meaning of the indictment is clear. And we are not without

Goodlove v. State.

judicial authority for the use of this exact expression in an indictment, for in the case of *McDonnall* v. *People*, 168 Ill. 93 [48 N. E. Rep. 86], the indictment charged that defendants "did strike, penetrate and wound" the deceased "one mortal wound," and this was held good. The court in that case said "To wound a person a mortal wound is fairly equivalent to giving such wound. The nature of the charge, could be readily understood by the jury, and a judgment on that count could be pleaded in bar to a further prosecution for the same offense"; and, while we have been cited to no other case, and have found none, where this exact expression is judicially approved, we can see no reason why, in view of the evident intent of Sec. 7215 and the equally evident intent of the indictment as drawn, the accused was not fairly apprised of the charge against him.

We are of the opinion, therefore, that this indictment, while unfortunately drawn, does contain within it language which, if certain superfluous words be ignored, as is expressly authorized to be done by Sec. 7215 Rev. Stat., not only states the crime of murder in the first degree, but so states it that no one could reasonably be misled as to the nature of the crime charged.

In reaching this conclusion we have not ignored the well settled principle that nothing in an indictment can be left to inference.

It is only because, in our judgment, this indictment does, if not as clearly as might be desirable, yet certainly and sufficiently, state every essential fact necessary to acquaint the accused with the nature and degree of the crime charged against him, that we have reached the conclusion just announced.

The phrase omitted, viz., "thereby then and there giving to him, the said Frank McCormick with said leaden bullet aforesaid" and even the entire additional phrase following that phrase and which appears meaningless without that omitted phrase, viz., "so as aforesaid discharged and shot out of the pistol aforesaid by the said James F. Goodlove, in and upon the upper right side of the back of him the said Frank McCormick" in reality adds nothing to what has been already averred, and both of these phrases are in fact mere repetitions of what had been previously stated.

That this is true will clearly appear from a reading of the indictment with all of these phrases, which we think superfluous, omitted. I quote as follows from what is left of that part of the indictment: "and that the said James F. Goodlove, a certain pistol then and there charged with gunpowder, and leaden bullets, which said pistol he, the

said James F. Goodlove then and there in his right hand had and held, then and there, unlawfully, purposely, and of deliberate and premeditated malice, did discharge and shoot off to, against and upon the said Frank McCormick, with the intent aforesaid, and that the said James F. Goodlove, with the leaden bullets aforesaid, out of the pistol aforesaid, by force of the gunpowder aforesaid, by the said James F. Goodlove then and there discharged and shot off as aforesaid, him the said Frank McCormick, in and upon the upper right side of the back of him, the said Frank McCormick then and there unlawfully, purposely, and of deliberate and premeditated malice did strike, penetrate and wound with the intent aforesaid, one mortal wound of the depth of four inches and of the breadth of half an inch, of which mortal wound he, the said Frank McCormick then and there died.''

It is evident that every essential idea, included in all of these omitted phrases, is expressed in what is left after their omission and that these omitted parts are in fact mere repetitions and hence superfluous.

What is left in this indictment fairly, and we think plainly, charges murder in the first degree without the aid of any inference whatever.

We are cited to numerous cases from other states where the omission of apparently unessential words in an indictment was held to be fatally defective, and to one of these cases where the omission of the word ''did'' before the words, beat, bruised and wound, was so held. The courts of this state have never sanctioned such extreme technicality and in our opinion the legislature has plainly declared that no such palpably technical objection shall be upheld, and such a construction is sanctioned not only by the Ohio authorities cited but by the United States courts and those of other states. See *United States* v. *Fero,* 18 Fed. Rep. 901.

The case of *Drake* v. *State,* 145 Ind. 216 [41 N. E. Rep. 799; 44 N. E. Rep. 188], is in many respects similar to the case at bar. There ''an indictment charged 'that *Ranph* D' killed deceased, shooting at and mortally wounding her with a revolver, 'which said revolver he, the said *Ralph* Drake, then and there had and held in his hands,' of which mortal wound deceased instantly died.'' It was held, ''that the indictment was not bad for uncertainty of defendant's name, as the words ''the said Ralph Drake'' might be eliminated, and yet leave the indictment sufficient.

''In such indictment the entire allegation 'which said revolver he,

Goodlove v. State.

the said Ralph Drake, then and there had and held in his hands,' might be rejected as surplusage.''

It will also be observed that in that case there is, strictly speaking, no direct averment that Ranph Drake did wound the deceased. There is only the participial phrase ''shooting at and mortally wounding her with a revolver'' followed by the clause ''of which mortal wound deceased instantly died.'' Grammatically this is bad English, yet its meaning is perfectly plain and the court held that language good in the indictment.

It follows from all of these authorities and from the reasoning suggested that the contentions of the attorneys for the plaintiff in error are unsound and that the indictment does fairly charge murder in the first degree.

The conclusion thus reached disposes not only of the first claim of error but also of the second, which is based upon it, viz., that if the indictment does not charge murder in the first degree, then the jury, which was impaneled under Sec. 7275 Rev. Stat., was illegally impaneled and that there was consequently a mistrial.

But another and third objection to the indictment is urged as a ground for reversal, and that is that, while the indictment charges an assault upon one ''Percy Stuckey, alias Frank McCormick'' the name ''Percy Stuckey'' nowhere again appears in the indictment but the deceased is constantly referred to as ''the said Frank McCormick.''

It is claimed, that this can only mean *the* Frank McCormick whose real name was Percy Stuckey; and in connection with this claim is the singular fact to which our attention is called, that there is no proof that the deceased was ever known as Percy Stuckey.

It is proved that the man killed was commonly known by the name, Frank McCormick; that this was not his real name but an alias— a name assumed by him in order to avoid detection as a deserter from the United States army. His sister was called upon to testify to these facts and she did so. Certainly she must have known his real name but she was not asked to give it, and did not. No other evidence was offered as to what that real name was. There is absolutely no proof that any one named Percy Stuckey was ever killed.

All of the proof was directed to the killing of Frank McCormick, and the killing of a man known by that name was not denied.

A very serious question is thus raised, viz., whether the indictment which charges an assault upon Percy Stuckey, *alias Frank McCormick*

and which proceeds to charge the murder of *the said Frank McCormick,* without again naming him as Percy Stuckey, can support a conviction for killing a Frank McCormick who is not shown to have been ever known as Percy Stuckey.

Had the indictment charged that the real name of the deceased was unknown but that he was known as Frank McCormick, no difficulty would have arisen. *United States* v. *Davis,* 25 Fed. Cas. 774 [4 Cr. C. C. 333]; *Brooster* v. *State,* 15 Ind. 190; *White* v. *People,* 32 N. Y. 465.

Or, had this been merely a case of variance between the name used in the indictment and the name proved by the evidence, the variance would have been cured by Sec. 7216 Rev. Stat. which provides that:

"When, on the trial of an indictment, there appears to be any variance between the statement in such indictment and the evidence offered in proof thereof, in the christian name or surname, or both christian name and surname, or other description, of any person therein named or described, or in the name or description of any matter or thing therein named or described, such variance shall not be deemed ground for an acquittal of the defendant, unless the court before which the trial is had find that such variance is material to the merits of the case, or may be prejudicial to the defendant."

The trial court in this case made no such finding. Nor can we conceive of any possible prejudice that could arise to the accused from such variance, unless it be on the question as to former jeopardy in case of a future indictment and bearing. But of that later.

None of the cases cited as throwing light on the meaning of this section really aid us in the consideration of the case at bar.

In the case of *Mead* v. *State,* 26 Ohio St. 505, it was held that the names "Elisha Davidson and Elijah B. Davison are different names, and the description of a person" in an indictment "by one of these names is not, in the absence of statutory provision, supported by proof of a person bearing the other name; but * * * a variance of this kind cannot work an acquittal of the defendant, unless it is found to be 'material to the merits of the case or prejudicial to the defendant.' In order to prevent its working such acquittal, however, it must appear that the person intended to be described in the indictment is identical with the person described in the proof, the variance arising from a mere mistake in the name."

But in the case at bar the difficulty arises from no mere mistake in the name charged and proven, nor does the case fall within the line of cases where the doctrine of *"idem sonans"* excuses a variance in

proof. As *e. g.,* in the case of *State* v. *Witt,* 34 Kas. 488 [8 Pac. Rep. 769].

. Nor is it a case where there is, strictly speaking, a variance in the description as to the person charged and the one proven as having been killed.

We are cited to a Massachusetts case where the indictment described one Laura A. Fairbanks as of Worcester, county of Worcester, Mass., and it did not appear that there was any one of that name residing in Worcester, but it did appear that the witness who had testified (falsely it was claimed) resided in New Hampshire. This was held a fatal variance. *Commonwealth* v. *Stone,* 152 Mass. 498 [25 N. E. Rep. 967].

In *Commonwealth* v. *Stone* the court held that,

"Although, in an indictment for subornation of perjury, the person alleged to have been procured to commit perjury need not be described by his residence, if such residence is alleged it must be proved, and a variance in the proof is fatal."

But the case at bar does not, in our opinion, present the question of variance between indictment and proof. There is in fact identity of proof as to the person killed bearing one of the names given in the indictment, the alias.

If the indictment is good as alleging the killing of Frank McCormick, and if the name Percy Stuckey is either surplusage or a mistake, not vital to the case, the proof is ample that a man known as Frank McCormick was actually killed and the verdict must stand unless set aside for other errors occurring at the trial.

And here it must be observed that there is a well recognized distinction as to the importance of the use of the term "alias" as applied to the name of the accused and the same term as applied to the party injured by the accused, greater strictness being always required in the former case, because the identity of the accused is always vitally important whereas in the case of the injured person, the name by which he is known is not always of vital importance.

And the gist of all of the distinctions prescribed by statute and insisted on by courts is the protection of the *accused* from possible injustice.

The great purpose behind the statutes which require the preparation of indictments is that the accused, as well as the court and jury, may known precisely the facts essential to the charge, especially the fact as to who is accused and of what crime he is accused.

### Wyandot County.

A mistake or defect in the indictment which can mislead the accused to his prejudice is always vital, and is fatal.

At common law and by the practice and statutes in many jurisdictions the utmost strictness was required to prevent such prejudice.

In Ohio the former rules are greatly modified and Sec. 7215 Rev. Stat. before referred to, is again in point. To again quote from that statute, it provides that,

"*No indictment shall be deemed invalid, nor shall the trial, judgment, or other proceeding be stayed,* arrested, or *in any manner affected* * * * for any surplusage, or repugnant allegation, when there is sufficient matter alleged to indicate the crime and, person charged; * * * nor for want of averment of any matter not necessary to be proved; nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Under a similar statute in Massachusetts, it was held that where the victim of the accused's act was named in the indictment as "Peddy Harvey" and also as "Peddy Hunt" thus "in and upon one Peddy Harvey did make an assault, and her, the said Peddy Hunt, then and there did beat, wound and illtreat," etc., the clause "and her, the said Peddy Hunt, then and there, etc., may be rejected as surplusage." *Commonwealth* v. *Hunt*, 21 Mass. (4 Pick.) 252. See also, *Commonwealth* v. *Randall*, 70 Mass. (4 Gray) 36.

"And where by mistake the indictment stated that defendant * * * did feloniously assault and wound one Dunlop, by means of which wounding the life of the said Craighead was then and there endangered, etc., the defect was cured by the statute of that state; the mistake being merely clerical and in no way tending to prejudice the substantial rights of the defendant." *State* v. *Craighead*, 32 Mo. 561.

And, if the name "Percy Stuckey" had been altogether omitted and the indictment had referred to the deceased merely by his assumed name "Frank McCormick" the indictment would undoubtedly have been held good for the accused could not have been prejudiced.

Thus, it was held in New York that, "An indictment for homicide, which states the name by which deceased was known among her acquaintances, is sufficient, even though it be not her true name." *Walter* v. *People*, 32 N. Y. 147.

Again in Texas it was held that:

"The requirement that an indictment must allege the name of the

Goodlove v. State.

injured party is to apprise the accused of the accusation against him, and is sufficiently done in an indictment for murder where the evidence shows that he was known to the accused by the name alleged.'' *Rye* v. *State,* 8 Tex. App. 163.

In the case at bar it is abundantly proven that the man killed was known to the accused as Frank McCormick, and it is clear that the indictment does apprise him of the fact that he is charged with killing Frank McCormick.

So ''In an indictment for murder, the person murdered may be described by the name by which he is commonly called and known, though differing from his name of baptism. *Commonwealth* v. *Desmarteau,* 82 Mass. (16 Gray) 1; see also *Pyke* v. *State,* 47 Fla. 93 [36 So. Rep. 577]; *People* v. *Woods,* 65 Cal. 121 [3 Pac. Rep. 466].

It will be noticed that in all of the cases cited, and others might be cited indefinitely, the determining thought is the protection of the accused by requiring in the indictment sufficient certainty to fully apprise him of the crime with which he is charged. If it does not do this, it is bad. If it does do this, it is good.

The supreme court of the United States has stated the rule thus: ''The true test'' of an indictment ''is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'' *Cochran* v. *United States,* 157 U. S. 286 [15 Sup. Ct. Rep. 628; 39 L. Ed. 704]; citing, *Evans* v. *United States,* 153 U. S. 584 [14 Sup. Ct. Rep. 934, 939; 38 L. Ed. 830].

As illustrating the application of this test the case of *People* v. *Lake,* 110 N. Y. 61, 63 [17 N. E. Rep. 146; 6 Am. St. Rep. 344], is interesting. There ''the indictment (in a case of incest) gave the name of the daughter as 'Georgiana Towne, commonly known as Georgiana Lake.' There was no question of her identity, for she was present during the trial and was identified by the witnesses. The proof shows that she was named Georgiana Jeanette, and, by an abbreviation of the middle name was generally spoken of as Nettie Lake.''

''It was no misnomer (says the court) to describe her as Georgiana Lake. Her name was Georgiana and she was commonly called Lake. Her father acknowledged her as his daughter, and she commonly bore his name, so that her true name in full was Georgiana Jeanette Lake and

it was 'no variance to describe her as Georgiana Lake, and the question of identity was put at rest by her presence.''

. From the somewhat meagre report of that case, it appears that like the case at bar, the name first given, Georgiana Towne, was not again used but the name Lake was constantly used, yet, the identity of the person being established, the indictment was held good.

So in the case of *Moree* v. *State*, 83 S. W. Rep. 1117, 1119 (Tex.):

' 'Appellant filed a motion to quash the indictment because it did not carry throughout the entire indictment the aliases of appellant. In the beginning of said indictment it is alleged that 'Ance Moree, alias John Thomas,' did unlawfully, etc. 'Alias John Thomas' is omitted in the succeeding portions of the indictment, but in stating the name oɪ appellant, he is styled 'the said Ance More.' This, (said the court) is sufficient, and the court did not err in refusing to quash the indictment.''

And in *Kennedy* v. *People*, 39 N. Y. 245, it was held that:'

"It is manifestly immaterial, where a person is known by two names, and the pleader, for greater certainly, deems it necessary to aver such fact in his pleading, which of the two names is first stated, and, also, in such case, which was the real name, and which was afterwards acquired.''

In the three cases last cited the reason behind the decisions was evidently the same; that is, that no prejudice could accrue to the accused from any change or omission of one or more of the names given in the indictment, as those of the deceased, or even of the accused, if the identity of the deceased or accused was established by the proof.

Under the rule in Ohio, parol proof of the name of the deceased and of the identity of the deceased with the person named in the indictment was properly admitted and such identity was clearly established.

The indictment informed the accused that he was charged with killing a person having two names by which he had been known, one of which was Frank McCormick. The proof showed, without denial, that a person known as Frank McCormick, though that was *not* his true name, had been killed by the accused as charged in the indictment and that the accused knew him as Frank McCormick at the time of the killing.

There is no possibility that the accused was mislead by the indictment as to the person whom he was charged with killing.

So far, he could not have been prejudiced.

Goodlove v. State.

But it urged that possibly at some future time, a new indictment might be framed against him, charging him, not with killing *this* Frank McCormick but with killing Percy Stuckey, or some other Frank McCormick, and that he might not then be able to plead his former conviction in this case, as a bar to such indictment.

This is one of the elements of the test as previously stated in the quotation from the decision of the Supreme Court of the United States in the case of *Cochran* v. *United States, supra.*

But we are clearly of the opinion that a conviction in the case at bar *might* be pleaded as a bar to any future indictment for the killing of the man killed in this case. As to any other killing there is no reason why it should be pleaded in bar.

Should the accused in this case be again indicted for the killing of Percy Stuckey he might on a plea in bar establish by parol proof or otherwise the fact of the identity of such Percy Stuckey with the person named in this indictment, if such were the fact.

By whatever name the deceased might be called in the future indictment, the fact, if it be a fact, that such deceased person was identical with the person named in this indictment could be proved on a plea in bar and such plea must then be sustained.

This view is sustained by the case of *Bainbridge* v. *State,* 30 Ohio St. 264. Evidently then this conviction under this indictment cannot deprive the accused of his right to plead it in bar and prove it in bar, in the possible event of his being hereafter indicted for the killing of Percy Stuckey or one known by any other name if such person was in fact the person shown in this case to have been killed.

We can conceive of no other prejudice which the accused has sustained from the form of the indictment and cannot therefore reverse the case on this ground.

Other errors are claimed by counsel for the accused, such as misconduct of counsel, misconduct of the audience during the trial and excessive sentence. But we are unable to find in any of these matters ground for reversal of the sentence imposed.

That sentence, while possibly more severe than we would ourselves have been willing to impose under all the circumstances proved in this case, was clearly within the limits of the law, and was within the discretion of the court.

The judgment of the trial court will therefore be affirmed.

**Kinder, J.,** concurs.

**Donnelly, J.,** dissents.